

**PORTLAND MAIN OFFICE**
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204
(503) 727-1000
www.usdoj.gov/usao/or

Gary Y. Sussman
Assistant U.S. Attorney
gary.sussman@usdoj.gov
(503) 727-1030
*Reply to Portland Office*

**U.S. DEPARTMENT OF JUSTICE**
United States Attorney's Office
District of Oregon
Billy J. Williams, United States Attorney

**EUGENE BRANCH**
405 E 8th Avenue, Suite 2400
Eugene, Oregon 97401
(541) 465-6771

**MEDFORD BRANCH**
310 West Sixth Street
Medford, Oregon 97501
(541) 776-3564

April 30, 2018

Richard L. McBreen III
Owens & McBreen, P.C.
319 SW Washington St., Suite 614
Portland, Oregon 97204

Re:   *United States v. Andre Eugene Shaw*
       Case No. 3:15-CR-00227-SI

Dear Mr. McBreen:

This letter will set forth the government's plea offer in this case.

1.   **Parties/Scope**: This plea agreement is between this United States Attorney's Office (USAO) and defendant, and thus does not bind any other federal, state, or local prosecuting, administrative, or regulatory authority, except as specifically provided herein. This agreement does not apply to any charges other than those specifically mentioned herein.

2.   **Charges and Penalties**: Defendant agrees to waive indictment and plead guilty to Counts 1-5 of a superseding information the USAO will file, charging him as follows:

   a.   Count 1 charges the offense of interfering with commerce by extortion, in violation of 18 U.S.C. §§ 1951(a) and 2. That offense carries a maximum penalty of 20 years' imprisonment, a $250,000 fine, a three-year term of supervised release, and a $100 statutory fee assessment.

   b.   Counts 2 and 3 charge the offense of transmitting threatening communications in interstate commerce with the intent to extort, in violation of 18 U.S.C. § 875(d). Each of those offenses carries a maximum penalty of two years' imprisonment, a $250,000 fine, a one-year term of supervised release, and a $100 statutory fee assessment.

   c.   Count 4 charges the offense of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). That offense carries a maximum penalty of 20 years' imprisonment, a $500,000 fine, a three-year term of supervised release, and a $100 statutory fee assessment.

Richard L. McBreen III
April 30, 2018
Page 2

---

      d.      <u>Count 5</u> charges the offense of possession of an unregistered short-barreled rifle, in violation of 26 U.S.C. § 5861(d). That offense carries a maximum penalty of ten years' imprisonment, a $10,000 fine, a three-year term of supervised release, and a $100 statutory fee assessment.

      Defendant will also admit the first, second, and third forfeiture allegations in the superseding information, and agrees to forfeit to the United States, or to abandon any right, title, or interest in, the property set forth below.

      In addition to the penalties described above, defendant understands that he may be required to pay restitution to the victims of the offenses to which he is pleading guilty. Defendant agrees to pay the total fee assessment by the change of plea hearing or explain to the court why he cannot do so.

3.      **Dismissal/No Additional Prosecution**: In exchange for defendant's guilty pleas, the USAO will move to dismiss the original and superseding indictments at the time of sentencing. In addition, the USAO agrees to neither file nor seek any new or additional federal criminal charges against defendant in the District of Oregon, presently known to the USAO, arising out of the investigation in this case. However, that agreement *does not include any charges that may arise from anything contained on any computer or electronic data storage device or medium seized from defendant during the investigation in this case that remains encrypted at the time defendant enters his guilty pleas.* Defendant expressly understands that the USAO makes no promises of any kind as to any potential future charges arising from anything contained on any encrypted device.

4.      **Sentencing Factors**: The parties agree that the court must determine an advisory sentencing guideline range pursuant to the United States Sentencing Guidelines (U.S.S.G.). The court will then determine a reasonable sentence within the statutory range after considering the advisory sentencing guideline range and the factors listed in 18 U.S.C. § 3553(a). The parties' agreement herein to any guideline sentencing factors constitutes proof of those factors sufficient to satisfy the applicable burden of proof.

5.      **Relevant Conduct**: The parties agree that defendant's relevant conduct, as defined in U.S.S.G. § 1B1.3, includes all of the unlawful conduct alleged in both the superseding indictment and the superseding information. For sentencing purposes, the parties agree that Counts 1 and 2 of the superseding information will constitute one group under the sentencing guidelines, Counts 3 and 4 will constitute a second separate group,

Richard L. McBreen III
April 30, 2018
Page 3

---

and Count 5 will constitute a third separate group. The parties agree that the following guideline calculations presently apply in this case:

Count 1

    Base offense level [U.S.S.G. § 2B3.2(a)] .................................................................. 18
    Amount demanded > $95,000 [§§ 2B3.2(b)(2) & 2B3.1(b)(7)] ........................... +2
    **Adjusted offense level** .................................................................................................. **20**

Count 2

    Base offense level [U.S.S.G. § 2B3.3(a)] .................................................................... 9
    Amount demanded > $95,000 [§§ 2B3.3(b)(1) and 2B1.1(b)(1)] ......................... +8
    **Adjusted offense level** .................................................................................................. **17**

Count 3

    Base offense level [U.S.S.G. § 2B3.3(a)] .................................................................... 9
    Amount demanded > $20,000 ............................................................................... +4
    **Adjusted offense level** .................................................................................................. **13**

Count 4

    Base offense level [U.S.S.G. § 2S1.1(a)(1)] ............................................................. 13
    Conviction under 18 U.S.C. § 1956 [§ 2S1.1(b)(2)(B)] ....................................... +2
    **Adjusted offense level** .................................................................................................. **15**

Count 5

    Base offense level [U.S.S.G. § 2K2.1(a)(5)] ............................................................ 18
    Three or more firearms [§ 2K2.1(b)(1)] .............................................................. +2
    **Adjusted offense level** .................................................................................................. **20**

Multiple Count Adjustment

    Group One adjusted offense level [Counts 1 & 2] ................................................ 20
    Group Two adjusted offense level [Counts 3 & 4] ............................................... 15
    Group Three adjusted offense level [Count 5] ...................................................... 20

     Total number of units [U.S.S.G. § 3D1.4] ........................................................... 2 1/2
     **Combined adjusted offense level**................................................................... **23**

Except as provided below, the parties agree that no additional specific offense characteristics or cross-references as set forth in U.S.S.G. §§ 2B3.2, 2B3.3, 2K2.1, and 2S1.1, and no aggravating or mitigating factors as set forth in U.S.S.G. Chapters Three or Five presently apply to this case.

8.    **Acceptance of Responsibility**: Defendant must demonstrate to the court that he fully admits and fully accepts responsibility for his unlawful conduct in this case. If defendant does so, the USAO agrees to recommend a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1 (two levels if defendant's combined adjusted offense level is less than 16). The USAO reserves the right to change this recommendation if defendant, between plea and sentencing, commits any new or additional criminal offense, obstructs or attempts to obstruct justice as explained in U.S.S.G. § 3C1.1, or does anything inconsistent with acceptance of responsibility as explained in U.S.S.G. § 3E1.1.

9.    **Sentencing Recommendation**: So long as defendant demonstrates an acceptance of responsibility, the government will recommend a sentence at the high end of the applicable advisory guideline range, but will not seek an upward departure or variance. Defendant may seek a lower sentence.

10.    **Additional Departures, Adjustments, or Variances**:

    A.    Defendant reserves the right to seek a downward departure, adjustment, or variance from the applicable sentencing guideline range determined by the Court. The government will oppose any such request.

    B.    Defendant agrees that if he seeks such a departure, adjustment, or variance, he will provide the government with notice of: (1) the factual basis for such request; (2) any evidence he intends to introduce or rely upon at the sentencing hearing; and (3) any witnesses, including expert witnesses, he intends to call or rely upon at the sentencing hearing. Such notice must be provided to the government no later than the Wednesday prior to the week during which the sentencing hearing is scheduled. If defendant fails to comply with this notice requirement, he will not oppose a government motion for a postponement of the sentencing hearing.

11.     **Waiver of Appeal/Post-Conviction Relief**: Defendant knowingly and voluntarily waives the right to appeal from any aspect of the conviction and sentence on any grounds, except for a claim that: (1) the sentence imposed exceeds the statutory maximum, or (2) the Court arrives at an advisory sentencing guideline range by applying an upward departure under the provisions of Guidelines Chapters 4 or 5K, or (3) the Court exercises its discretion under 18 U.S.C. § 3553(a) to impose a sentence which exceeds the advisory guideline sentencing range as determined by the Court. Defendant's waiver includes, but is not limited to, any challenges to the constitutionality of the statutes to which defendant is pleading guilty and any argument that the facts to which defendant admits are not within the scope of the statutes. Should defendant seek an appeal, despite this waiver, the USAO may take any position on any issue on appeal. Defendant also waives the right to file any collateral attack, including a motion under 28 U.S.C. § 2255, challenging any aspect of the conviction or sentence on any grounds, except on grounds of ineffective assistance of counsel, and except as provided in Fed. R. Crim. P. 33 and 18 U.S.C. § 3582(c)(2).

12.     **Court Not Bound**: Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the court is not bound to adopt or accept the recommendations of the parties or the presentence report writer. Defendant may not withdraw any guilty plea or rescind this plea agreement if the court does not follow the agreements or recommendations herein.

13.     **Full Disclosure/Reservation of Rights**: The USAO reserves the right to oppose or contest any argument made or motion filed by defendant at any time. The USAO also reserves the right to challenge statements of fact or guideline calculations in the presentence report, and will fully inform both the court and the U.S. Probation Office of the facts of this case and the bases for its recommendations.

14.     **Breach of Plea Agreement**: If defendant breaches the terms of this agreement, or commits any new criminal offense between signing this agreement and sentencing, the USAO is relieved of its obligations under this agreement, but defendant may not withdraw any guilty plea.

        If defendant believes that the government has breached the plea agreement, he must raise any such claim before the district court, either prior to or at sentencing. If defendant fails to raise such a claim in district court, he has waived that claim and is precluded from raising such a claim for the first time on appeal.

Richard L. McBreen III
April 30, 2018
Page 6

15.  **Elements and Facts**: Defendant understands that the elements of the offense of interference with commerce by extortion are as follows:

    a.    On or about the dates alleged in Count 1 of the superseding information, in the District of Oregon, defendant knowingly induced the victim identified in that count to part with property or money by the wrongful use of actual or threatened force, violence, or fear;

    b.    Defendant acted with the intent to obtain property; and

    c.    Commerce from one state to another was or would have been affected in some way.

Defendant understands that the offense of interstate communications with the intent to extort are as follows:

    a.    On or about the dates alleged in Counts 2 and 3 of the superseding information, in the District of Oregon, defendant knowingly sent a message in interstate commerce containing a true threat to injure the reputation of the person identified in each count, or to accuse that person of a crime;

    b.    Defendant did so with the intent to extort money or something else of value.

Defendant understands that the elements of the offense of money laundering are as follows:

    a.    On or about the date alleged in Count 4 of the superseding information, in the District of Oregon, defendant conducted a financial transaction involving property that represented the proceeds of transmitting interstate communications with the intent to extort;

    b.    Defendant knew that the property represented the proceeds of some form of unlawful activity; and

    c.    Defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds.

Defendant understands that the elements of possession of a short-barreled rifle are as follows:

a. On or about the date alleged in Count 5 of the superseding information, in the District of Oregon, defendant knowingly possessed a firearm, as defined in the National Firearms Act;

b. The firearm was a rifle having a barrel less than 16 inches in length;

c. Defendant knew the barrel was less than 16 inches in length;

d. The rifle was in operating condition; and

e. The firearm was not registered to defendant in the National Firearms Registration and Transfer Record.

Defendant stipulates that the government can present facts sufficient to prove each of the foregoing offenses beyond a reasonable doubt, including the following:

a. "JAD" was a producer of and trader in child pornography. Beginning in or around October 2011, JAD was extorted online by a person or persons who used the screen names "Blackhands" and "Redeemer."

b. "Blackhands" contacted JAD via email, told JAD he knew who JAD was and what he was doing, and initially demanded payment of $10,000 or his life would be over. JAD could not pay that amount in a lump sum, so he arranged to pay $1,000 per month. JAD paid $1,000 per month for about a year and a half. The monthly payment amount was reduced to $500 after JAD agreed to receive payments from other extortion victims and forward the payments to someone named "Joe," who was later identified as defendant. At first, JAD sent his extortion payments via Western Union money transfers. Eventually, he paid defendant directly.

c. According to JAD, defendant provided him with false identification documents, including driver's licenses and military contractor identification cards, in a number of different names. JAD received extortion payments from a number of individuals via electronic money transfers, and gave the money to defendant.

Richard L. McBreen III
April 30, 2018
Page 8

---

    d.    At one point, the extortionist increased the amount of money demanded to $100,000, and also demanded that JAD turn his own prepubescent daughter over to Joe. It was JAD's understanding that Joe or someone else was going to use his daughter to produce child pornography. JAD turned his daughter over to defendant (who he knew as "Joe") two or three separate times. JAD drugged his daughter each time. On the last occasion, JAD was directed to bring certain props (such as costumes, make up, and sex toys) and a digital camera with a memory card. He did as he was told. At the end of that day, defendant returned JAD's daughter, the box of props, and the digital camera (minus the memory card). Defendant's palm print was found on the outside of the box.

    e.    One of the people from whom JAD collected money for defendant was "KAS." KAS, who lived in California, reported receiving an email in or around January 2014 that contained screen shots of his computer, including work and personal emails, social media profiles, banking information, and the like. KAS said he had been viewing homosexual pornography – but not child pornography – on the internet. The email threatened to ruin his life if he did not pay. He was given seven days to pay $500 or risk exposure. KAS sent the money as instructed via a Western Union money transfer.

    f.    After making the initial payment, KAS was given the option of continuing to pay $500 monthly or make a lump sum payment of $20,000. KAS decided to pay the lump sum amount. He was directed to fly to Portland to deliver the money in person. KAS took out a personal loan, flew to Portland, obtained the money from a local bank branch, and delivered the money to JAD at a local coffee shop. JAD gave the money to defendant.

    g.    In all, JAD received at least $68,000 in extortion payments from various victims, which he then gave to defendant. In addition, Western Union and MoneyGram documents revealed numerous wire transfers from multiple individuals directly to defendant, under various alias names.

    h.    On December 18, 2014, agents and task force officers of the FBI executed a search warrant at defendant's residence. They seized computer equipment and digital data storage media; false identification documents bearing defendant's photograph and many of the alias names used to receive electronic money transfers; supplies, equipment, and implements for making false identification documents; numerous firearms, magazines, and

        ammunition, including a Bushmaster .223 caliber assault rifle with a barrel less than 16 inches in length and three homemade silencers; police and DEA badges; a ballistic vest; and various coins, cash, and precious metals, including silver bars, silver coins, and gold coins. The Bushmaster rifle was not registered to defendant in the National Firearms and Transfer Record as required by law.

    i.    Among the digital data storage media were a number of compact discs containing a printed image of a black, silhouetted figure with a large, prominently extended hand (a "black hand" of sorts). Each disc had a set of initials and an alpha-numeric code. The initials match those of many of the extortion victims (including JAD and KAS) who sent payments either directly to defendant, or to defendant through JAD. Most of the computer equipment and data storage media (including the compact discs) remain encrypted. Their actual contents are unknown.

16.    **Restitution**: The Court shall order restitution to each victim in the full amount of each victim's losses as determined by the Court. Defendant agrees to pay restitution for all losses proximately caused by defendant's conduct, regardless of whether counts of the indictment or information dealing with such losses will be dismissed as part of this plea agreement.

    Defendant understands and agrees that the total amount of any monetary judgment that the court orders defendant to pay will be due and payable immediately. Defendant further understands and agrees that pursuant to Title 18, United States Code, Section 3614, he may be resentenced to any sentence that could have originally been imposed if the court determines that he knowingly and willfully refused to pay restitution as ordered or failed to make sufficient bona fide efforts to pay restitution. Additionally, defendant understands and agrees that the government may enforce collection of restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any initial or subsequently modified payment schedule set by the court. Defendant understands that any monetary debt he owes in connection with this matter may be included in the Treasury Offset Program (TOP) to potentially offset his federal retirement benefits, tax refunds, and other federal benefits.

    Pursuant to Title 18, United States Code, Section 3612(b)(F), defendant understands and agrees that until a restitution order is paid in full, he must notify the USAO of any change in his mailing address or residence address within 30 days of the change. Further, pursuant to Title 18, United States Code, Section 3664(k), defendant

Richard L. McBreen III
April 30, 2018
Page 10

---

must immediately notify the court and the USAO of any material change in his economic circumstances that might affect his ability to pay restitution, including but not limited to new or changed employment, increases in income, inheritances, monetary gifts, or any other acquisition of assets or money.

Defendant expressly authorizes the USAO to obtain his credit report. Defendant agrees to provide waivers, consents, or releases requested by the USAO to access records to verify financial information. Defendant also authorizes the USAO to inspect and copy all financial documents and information held by the U.S. Probation Office.

Defendant agrees to notify the Financial Litigation Unit of the USAO before he transfers any interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by defendant, including any interest held or owned under any name, including trusts, partnerships and corporations.

17. **Forfeiture and Abandonment Terms**:

   A. **Assets and Authority**: By signing this agreement, defendant knowingly and voluntarily forfeits all right, title, and interest in and to $105,000 pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), which defendant admits represents proceeds he personally obtained, directly or indirectly, as a result of his criminal activity set forth in Counts 1-3 of the superseding information, and pursuant to 18 U.S.C. § 982(a)(1), which defendant admits represents property, real or personal, involved in the money laundering offense as set forth in Count 4 of the superseding information.

   Defendant knowingly forfeits all right, title, and interest in and to the following substitute assets, pursuant to 21 U.S.C. § 853(p), in partial satisfaction of the above-listed money judgment:

   - Precious Metals/Coins (all valued at $71,013.76):
     o 1B80/1B108, which consists of 60 silver coins contained in three sleeve-like containers, valued at $1,024.80;
     o 1B81/1B109, which consists of 69 silver coins contained in three sleeve-like containers, valued at $1,178.52;
     o 1B82/1B110, which consists of 51 "5 dollar Elizabeth II coins" contained in two sleeve-like containers, valued at $871.08;
     o 1B83/1B111, which consists of 57 silver coins contained in three sleeve-like containers, valued at $973.56;

Richard L. McBreen III
April 30, 2018
Page 11

---

- o B84/1B112, which consists of 60 silver coins contained in three sleeve-like containers, valued at $1,024.80;
- o 1B86, which consists of 45 ten-Troy-ounce silver bars, valued at $7,886.00;
- o 1B87, which consists of 31 ten-ounce silver bars and one 100-ounce silver bar, valued at $7,002.80;
- o 1B88, which consists of 15 ten-ounce silver bars, two 100-ounce silver bars, eight one-ounce silver coins contained in a sleeve, four fine one-ounce gold coins, 160 one-ounce silver coins, and 15 one-ounce gold coins, valued at $34,326.44;
- o 1B89, which consists of one 100-ounce silver bar and 31 ten-ounce silver bars, valued at $7,002.80;
- o 1B105, which consists of one 100-ounce silver bar, 21 loose ten-ounce silver bars and ten ten-ounce silver bars in a clear envelope protector, valued at $7,002.80;
- o 1B106, which consists of two South African collectible gold coins and two one-Troy-ounce silver coins, valued at $2,720.16;
- $13,344 in U.S. currency
- Weapons and Ammunition (all valued at $1,770):
    - o Glock Model 21 .45 caliber semi-automatic pistol, serial no. BLW363, valued at $500
    - o Glock Model 30 .45 caliber semi-automatic pistol, serial no. CVX542, valued at $500
    - o Mossberg 20ga shotgun with collapsible stock/taillight, serial no. UZ6Z639, valued at $250
    - o AR-style upper barrel, DPMS 5.56 w/ rail in tactical bag, valued at $300
    - o Six Glock .45 caliber magazines with .45 caliber ammunition, valued at $120
    - o Four Glock .45 caliber magazines with .45 caliber ammunition with nylon magazine pouch, valued at $80
    - o Glock .45 caliber magazine, no ammunition, valued at $20
    - o Bandolier with 26 20-gauge shotgun shells, valued at $100

Defendant also knowingly and voluntarily forfeits all right, title, and interest in and to a Bushmaster XM15-E2S .223 caliber semi-automatic rifle, with attachments, pursuant to 26 U.S.C. § 5842(a), which defendant admits is the firearm involved in the violation set forth in Count 5 of the superseding information.

Defendant admits that he is the sole owner of the property specified in "Notice of Abandonment of Property" provided to defendant with this plea letter. Defendant hereby

Richard L. McBreen III
April 30, 2018
Page 12

---

agrees to abandon all of his right, title, and interest in that property pursuant to Title 41, Code of Federal Regulations (CFR), Section 148-48.102.1, and waives any right to notice of any abandonment proceedings.

At the conclusion of the case, including sentencing and any appeals, the United States will return to defendant or his designated representative the following property:

- 707 brand motorcycle helmet with pink Mohawk ornament;
- Iron mask with camo paint, designed by ColdBlood Art;
- One collectible Canadian coin: 1883 Victoria half-penny, valuable item 17C;
- Collectible U.S. currency from valuable item 18C - seven quarters; seven nickels; and 25 pennies;
- Collectible U.S. currency from valuable item 17C - one quarter; eight dimes; 21 nickels; and 319 pennies;
- One gold necklace with a gold dolphin and heart charm; and
- One thumb drive containing files from "Eugene" folder taken from computer in Room K.

      B.    **Agreement to Civil Forfeiture**: Defendant agrees not to file a claim or to withdraw any claim already filed to any of the property listed above in any civil proceeding, administrative or judicial, which may be initiated. Defendant further waives the right to notice of any forfeiture proceeding involving this property, and agrees not to assist others in filing a claim in any forfeiture proceeding.

      C.    **No Alteration or Satisfaction**: Defendant knowingly and voluntarily waives the right to a jury trial on the forfeiture of assets. Defendant knowingly and voluntarily waives all constitutional, legal, and equitable defenses to the forfeiture of these assets, including any claim or defense under the Eighth Amendment to the United States Constitution, and any rights under Rule 32.2 of the Federal Rules of Criminal Procedure. Defendant further agrees that forfeiture of his assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon defendant in addition to forfeiture.

      D.    **Title Assistance**: Defendant agrees to fully assist the USAO in the forfeiture of the listed assets and to take whatever steps are necessary to pass clear title to the United States, including but not limited to surrender of title and execution of any documents necessary to transfer defendant's interest in any of the above property to the United States, and assist in bringing any assets located outside the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure

Richard L. McBreen III
April 30, 2018
Page 13

---

that assets subject to forfeiture are not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture.

    E.    **Assets Not Identified**: The USAO reserves its right to proceed against any remaining assets not identified either in this agreement or in any civil actions that are being resolved along with this plea of guilty, including any property in which defendant has any interest or control, if said assets, real or personal, tangible or intangible, are subject to forfeiture.

    F.    **Disclosure of Assets**: Defendant agrees to completely and truthfully disclose to law enforcement officials, at a date and time to be set by the USAO, the whereabouts of defendant's ownership interest in, and all other information known to defendant about, all monies, property, or assets of any kind in the possession of defendant or nominees, derived from or acquired as a result of, or involved in, or used to facilitate the commission of defendant's illegal activities, and to complete and deliver to the USAO no later than 30 days following the change of plea hearing a financial disclosure form listing all of defendant's assets. Defendant understands and acknowledges that the USAO is relying upon defendant's representations in entering into this plea agreement. If those representations are false or inaccurate in any way, the USAO may pursue any and all forfeiture remedies available, may seek to have the plea agreement voided, and may seek to have defendant's sentence enhanced for obstruction of justice pursuant to U.S.S.G. § 3C1.1. The parties agree that defendant's failure to timely and accurately complete and sign the financial disclosure statement, and any update thereto, may, in addition to any other penalty or remedy, constitute defendant's failure to accept responsibility under U.S.S.G § 3E1.1.

    G.    **Polygraph Examination**: Defendant further agrees to submit to a polygraph examination on the issue of assets if it is deemed necessary by the United States, with an examiner selected by the USAO. If the examination results indicate an intent to deceive the USAO with respect to assets, defendant will be afforded the opportunity to review and explain the deceptive responses, and to obtain an independent polygraph examination. If, after consideration of defendant's responses, the USAO is convinced that defendant's financial statement is not complete and truthful, the USAO is not limited to the forfeiture set forth in this agreement and is free to pursue all forfeiture remedies available.

18.    **Total Agreement**: This letter states the full extent of the agreement between the parties. There are no other promises, representations, or agreements, either express or

Richard L. McBreen III
April 30, 2018
Page 14

---

implied, by or between the parties. Defendant agrees that no officer, employee, or agent of the United States has threatened or coerced him to induce him to accept this offer.

If defendant wishes to accept this offer under the terms and conditions set forth herein, both of you should sign and date this letter in the spaces provided below. Please attach the signed original to the plea petition, and send me a copy at your earliest convenience.

Very truly yours,

BILLY J. WILLIAMS
United States Attorney

*/s/ Gary Sussman*
GARY Y. SUSSMAN
Assistant United States Attorney

*/s/ Julia Jarrett*
JULIA JARRETT
Assistant United States Attorney

I FREELY AND VOLUNTARILY ACCEPT THE TERMS AND CONDITIONS OF THIS PLEA OFFER, AFTER FIRST REVIEWING AND DISCUSSING EACH PART OF IT WITH MY ATTORNEY. I AM SATISFIED WITH THE LEGAL ASSISTANCE PROVIDED TO ME BY MY ATTORNEY. I WISH TO PLEAD GUILTY BECAUSE I AM GUILTY.

5/2/18
Date

By: _____
ANDRE EUGENE SHAW
Defendant

I am legal counsel for defendant. I have carefully reviewed and discussed every part of this plea offer with defendant. To my knowledge, defendant's decisions to accept this agreement and to plead guilty are informed and voluntary ones.

5/2/18
Date

_____
RICHARD L. McBREEN III
Attorney for Defendant