

**Richard L. McBreen III**
**Attorney**
richard@attorneyspdx.com
p. (503) 384-2420
f. (503) 384-2427

319 SW WASHINGTON ST
SUITE 614
PORTLAND, OR 97204

attorneyspdx.com

**Via Electronic Filing**

Thursday, August 30, 2018

Honorable Michael H. Simon
U.S. District Court Judge
1000 S.W. Third Ave.
Portland, OR 97204

      ***RE:    United States v. Shaw, Andre (AKA Joseph Stanis);***
                  ***Case No. 3:15-CR-00227-SI***

Dear Judge Simon:

Mr. Joseph Stanis (indicted herein as Andre Shaw) is before the Court on September 6, 2018 at 3:00 p.m. for sentencing. On May 9, 2018, Mr. Stanis pleaded guilty to a five-count Superseding Information, dated May 1, 2018.

<u>Count 1</u> alleges that beginning on or about October 2011 and continuing to on or about July 18, 2014, in the District of Oregon, defendant Andre Eugene Shaw, also known as Joe Stanis, did knowingly and unlawfully obstruct, delay, and affect commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in 18 U.S.C. § 1951, in that defendant obtained the property of "JAD" with JAD's consent, induced by the wrongful use of fear, in violation of 18 U.S.C. §§1951(a) and 2.

<u>Count 2</u> alleges that beginning on or about October 2011 and continuing to on or about July 18, 2014, in the District of Oregon, defendant Andre Eugene Shaw, also known as Joe Stanis, knowingly transmitted in interstate commerce, with the intent to extort from a person money and other things of value, communications containing a threat to injure the reputation of "JAD," the addressee, or to accuse JAD of a crime, in violation of 18 U.S.C. §§ 875(d) and 2.

<u>Count 3</u> alleges that beginning on or about January 10, 2014, and continuing to on or about January 24, 2014, in the District of Oregon, the defendant knowingly transmitted in interstate commerce, with the intent to extort from a person money and other things of value, a communication containing a threat to injure the reputation of "KAS," the addressee, or to accuse KAS of a crime; in violation of 18 U.S.C. §§ 875(d) and 2.

<u>Count 4</u> alleges that on or about January 24, 2014, in the District of Oregon, the defendant did knowingly conduct a financial transaction

August 30, 2018

Honorable Judge
Michael H. Simon

*RE: United States v.
Shaw, Andre*

involving the proceeds of a specified unlawful activity, namely the offense alleged above in Count 3 of this Superseding Information, incorporated herein by reference, which is an offense affecting interstate commerce, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; all in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

<u>Count 5</u> alleges that on or about December 18, 2014, in Multnomah County, in the District of Oregon, the defendant knowingly and unlawfully possessed a firearm, namely a Bushmaster XM15-E2S .223 caliber semi-automatic rifle, serial number L377455, having a barrel less than 16 inches in length, that was not registered to him in the National Firearms Registration and Transfer Record; in violation of 26 U.S.C. § 5861(d).

The Superseding Information also includes three forfeiture allegations, which Mr. Stanis has admitted at the time of his plea hearing. A Preliminary Order and Final Order of Forfeiture was filed in this case, ordering the defendant to forfeit $105,000. Approximately $86,000 of the total forfeiture amount is already satisfied by the defendant based on the plea agreement between the parties, however, a third party, Molly Poston, has asserted an interest in $9,000 of the cash amount to be forfeited.

Mr. Stanis is asking the Court to follow the plea agreement between him and the Government and to impose a sentence of 41 months, with stringent but appropriate conditions of supervision as set out in the presentence report and as suggested by the Government.

## PLEA NEGOTIATIONS AND PLEA AGREEMENT

Mr. Stanis entered his guilty plea under Rule 11(c)(1)(B). The Court is not bound by the recommendations of the parties, and this plea does not carry a mandatory minimum sentence.

The parties have agreed that defendant's relevant conduct, as defined in U.S.S.G. § 1B1.3, includes all of the unlawful conduct alleged in both the superseding indictment and the superseding information.

The base offense level for Count 1 is 18 under U.S.S.G. § 2B3.2(a). The offense level is increased under §§ 2B3.2(b)(2) & 2B3.1(b)(7) by 2, due to making a demand of more than $50,000. The adjusted offense level for Count 1 is 20.

The base offense level for Count 2 is 9 under U.S.S.G. § 2B3.3(a). The offense level is increased under §§ 2B3.3(b)(1) & 2B1.1(b)(1) by 8 due to making a demand of more than $70,000. The adjusted offense level for Count 2 is 17.

Counts 1 and 2 are grouped for guideline calculation purposes. U.S.S.G. § 3D1.2(b).

The base offense level for Count 3 is 9 under U.S.S.G. § 2B3.3(a). The offense level is increased under §§ 2B3.3(b)(1) & 2B1.1(b)(1) by 4 due to making a demand of $20,000 or more. The adjusted offense level is 13.

2

August 30, 2018

Honorable Judge
Michael H. Simon

*RE: United States v.*
*Shaw, Andre*

The base offense level for Count 4 is 13 under U.S.S.G. § 2S1.1(a)(1). The offense level is increased by 2 under § 2S1.1(b)(2)(B) due to the defendant being convicted under 18 U.S.C. 1956. The adjusted offense level for Count 4 is 15.

Counts 3 and 4 are grouped for guideline calculation purposes. U.S.S.G. §3D1.2(b).

The base offense level for Count 5 is 18 under U.S.S.G. § 2K2.1(a)(5). The offense level is increased by 2 under § 2K2.1(b)(1) based on the presence of three or more firearms. The adjusted offense level for Count 5 is 20.

Count 5 constitutes a third group for sentencing purposes. The adjusted offense level for Group One is 20. The adjusted offense level for Group Two is 15, and the adjusted offense level for Group Three is 20.

The multiple count adjustment increases the offense level by 3 under U.S.S.G. § 3D1.4 (2 1/2 units), which results in a combined adjusted offense level of 23.

The parties agree that no additional specific offense characteristics or cross-references as set forth in U.S.S.G. §§ 2B3.2, 2B3.3, 2K2.1, and 2S1.1, and that no aggravating or mitigating factors as set forth in U.S.S.G. Chapters Three or Five presently apply to this case.

The parties agree that Mr. Stanis should receive a 3-level reduction under U.S.S.G. 3E1.1 for acceptance of responsibility, resulting in a **Total Offense Level of 20.**

Subject to a standard waiver with some limitations, the defendant has waived his appellate rights.

The government will move to dismiss the original and Superseding Indictments at the time of sentencing. In addition, the government agrees to neither file nor seek any new or additional federal criminal charges against defendant in the District of Oregon, presently known to the government arising out of the investigation in this case. However, that agreement does not include any charges that may arise from anything contained on any computer or electronic data storage device or medium seized from defendant during the investigation in this case that remains encrypted at the time defendant entered his plea.

This case was negotiated with Assistant United States Attorney Gary Sussman.

## SENTENCING GUIDELINE RANGE

|  | Government | PSR | Mr. Stanis |
|---|---|---|---|
| Total Offense Level | 23 | 23 | 23 |
| Acceptance | -3 | -3 | -3 |
| Total Offense | 20 | 20 | 20 |

3

The parties agree that Mr. Stanis' Criminal History Score is 0. With an offense level of 20, his guideline range is 33-41 months.

## BACKGROUND

Andre Eugene Shaw (now Joseph Stanis) was born on July 12, 1984, in Brooklyn, New York. He is one of three children born to Andre Moran and Nancy Shaw. Mr. Stanis does not have any current information about his father. His mother Nancy, age 57, resides in Gloversville, New York, and is disabled due to a back injury. The defendant has two brothers: Anthony and Phillip Moran. Anthony, age 30, is employed as a factory worker; Phillip, age 31, is employed as a distribution warehouse manager. Both brothers also reside in Gloversville.

The defendant also has a maternal half-sister, Caprice Shaw, age 39, who resides in Schenectady, New York, and is employed as a home health aid. The defendant indicated he has three paternal half-siblings that he has never met.

Mr. Stanis' parents separated when he was 7 years old, and grew up poor and on public assistance. His father was physically abusive towards him and his siblings, as well as their mother. Mr. Stanis reports that his father "wanted to be left alone" and when the kids "got too loud" their father locked them in a closet or hit them with a metal studded belt. At times, the defendant and his siblings hid the belt and then their father would grab a branch to hit them. Mr. Stanis also reports that his father also abused alcohol and controlled substances. Mr. Stanis also believes his father sold guns and drugs.

Mr. Stanis' father committed domestic violence against his mother in front of him and the other children on more than one occasion. Early in the defendant's childhood his father was arrested for rape. It was during this time that the defendant's mother relocated the family to Gloversville, New York, where Mr. Stanis indicates life was better. However, the move also exposed Mr. Stanis to more racism, which was difficult for him and his family. Other children called him names and he felt like he had to "defend his honor" so he kept to himself instead. During his childhood, Mr. Stanis enjoyed playing paintball with friends, and coin and fossil collecting. Mr. Stanis also reports attempting to run away around age 14 for reasons he cannot recall.

Mr. Stanis reports being introduced to alcohol around age 8 or 10. He explained that he eventually came to consume alcohol on a daily basis as a teenager. He made a fake ID at age 15 to buy alcohol and would purchase alcohol to consume on his way home from school. He suggests his heaviest alcohol use came between ages 15-17. Mr. Stanis acknowledges that alcohol use began to cause problems in his life, and he stopped around age 18. Mr. Stanis also reports cannabis use starting at age 10, with more regular use beginning around age 14.

Mr. Stanis says that his relationship with his mother was distant when he was a child, and he relates to his mother much better now that he is older. His mother was at some point diagnosed with PTSD and has spent years seeing a therapist. Mr. Stanis says that his mother is now well-rounded and supportive.

Mr. Stanis did not have a close relationship with his sister Caprice because she was older and a "rebellious teenager," when Mr. Stanis was a child. He does have close relationships with his brothers and they maintain regular contact. Mr. Stanis identifies his sister's rape as a traumatic experience during his childhood. He remembers being very young and learning what happened, and feeling regretful he couldn't do anything to help.

Mr. Stanis says his father was subsequently convicted of rape and sent to prison. He reports that he did not see his father for the rest of his childhood. He grew up without a father-figure or a male role model, and that he had to fulfill this role for his younger siblings. Mr. Stanis says the last time he saw his father was in either 2009 or 2010. He reports that upon his father's release from prison, his father tried to resume his relationships with his mother, but he was unsuccessful.

Mr. Stanis attended Gloversville High School in New York. He left school after his arrest in 11th grade and earned his GED shortly thereafter.

Mr. Stanis has never been married. He met the mother of his children, Amanda Stumbrice, while in high school, at a time when they were also neighbors. They had dated off and on for over 10 years, and have two children together—T.S., age 14, and E.S., age 9. Both children reside with Ms. Stumbrice in Johnstown, New York. Prior to his incarceration in this matter, Mr. Stanis would send Ms. Stumbrice $400 per month ($200 per child) and would also reimburse her for specific expenses.

Mr. Stanis reports four long-term relationships in his life. His most recent being with Molly Taylor (now Molly Poston) in Portland, OR. The two were together for six years until she ended it while he was in custody on these pending charges.

Mr. Stanis has been self-employed as a strategic planner. He also wrote business plans for start-ups. Prior to that, he was self-employed writing custom software applications for people that contacted him through online job postings. It was through these building custom applications that Mr. Stanis ended up becoming involved in the extortion and other acts involved in this case.

On December 11, 2014, about a week prior to his incarceration on this case, Mr. Stanis' home was invaded by an unknown individual, and the individual attempted to murder Mr. Stanis by firing a gun at his head. That individual was Shawn Bartmess, and he was charged with aggravated attempted murder in Multnomah County case number 14CR31767, and he is currently serving a 120-month prison sentence. While the case was treated as a "routine" burglary-gone-wrong, Mr. Stanis believes that the people he was working for sent the person to shoot him because the other person with whom he was laundering money (Jason Dunlap) was arrested and cooperating with authorities.

Mr. Stanis reports several health issues throughout his life. He reports a tumor in his knee when he was in elementary school kept him from participating in PE and other physical activities. He reports that he currently has pain in his leg and blood circulation problems. The tumor was never removed. Mr. Stanis reports conflicting MRIs that have suggested he may have a brain tumor, but that subsequent MRIs have shown to be negative. Mr. Stanis also notes that he was in a car accident at age 13 or 14,

and he spent about one week in the hospital. He went through the windshield of a car while he was on a bicycle, and he was unconscious for several days, and he reports periodic blackouts with a frequency of about once per year.

Mr. Stanis has struggled with anxiety and depression since adolescence. Additionally, Mr. Stanis has attempted suicide three time in his life. The most recent attempts came while he was in pre-trial detention on this case—one attempt was when he tried to hang himself with a sheet in the kitchen and another was when he took a large number of pills in hopes of an overdose. He also attempted suicide while in custody when he was approximately 17 years old. Mr. Stanis reports that he currently does not have suicidal thoughts and says he has many reasons to stay alive—for example, he notes he wants to repair and improve his relationship with his children, go back to school, and find a long-term career.

Mr. Stanis reported that in approximately 2012, he began using the name "Joe Stanis" after moving to Portland.

### MR. STANIS' INVOLVEMENT IN THE EXTORTION SCHEME

Mr. Stanis got involved with this scheme by offering his services in making cryptographic software over the internet. He states that the work started out as legitimate work—creating business plans and writing code for specific applications or programs. He eventually got requests from people he describes as "nefarious characters" that he has never personally met, at least knowingly. Mr. Stanis wrote code that would allow individuals or groups to blackmail and extort others that were involved with possessing and sharing child pornography online. While Mr. Stanis knew his programs were being used unlawfully, he justified the work because, in his view, it was only hurting people who deserved it. Mr. Stanis was eventually asked if he could produce false identification cards, which he also agreed to, and he began laundering money as well.

Around the time his relationship in New York was ending, he was looking to move away and stop doing this kind of work. However, when he explained that he was looking to move on from the work he was doing, the people he worked for offered him work and a place to stay in Portland, Oregon. Mr. Stanis then moved to Portland and continued producing false identification cards and laundering money, almost always through another contact, Jason Dunlap. Mr. Stanis attribues the decision to move to Portland to having lost his roots due to seeing the break-up of his own family. He admits the money was too easy and he let himself be tempted during one of the worst times of his life.

Ultimately, Mr. Stanis' work allowed numerous individuals to access the internet networks and computers of other people who downloaded child pornography in order to gather information about them for potential blackmail or extortion.

### POST OFFENSE REHABILITATION

The conditions of probation the Court sets should be designed to assist Mr. Stanis in becoming a meaningful participant in society, while at the same time closely monitoring such things like computer and internet use as he works towards that goal. Mr. Stanis has been in custody for approximately

August 30, 2018

Honorable Judge
Michael H. Simon

*RE: United States v.
Shaw, Andre*

45 months, and he is looking forward to achieving his goals once he is released. Among them are going back to school to further his education and repairing his relationships with his children.

Mr. Stanis acknowledges the need to increase his pro-social support network and find gainful employment to mitigate the risks of re-offending. He looks forward to engaging in mental health treatment. Additionally, he is eager to pay off all his financial obligations regarding restitution and forfeiture. Mr. Stanis is very intelligent, and he is talented at the work that he does, and there is no doubt he can be successful at a number of different careers should he apply himself fully.

### SUFFICIENT SENTENCE AND SERIOUSNESS OF THE OFFENSE

The charges and conduct in this case are very serious offenses. With regard to Mr. Stanis however, the seriousness of the offenses are somewhat mitigated. For example, originally, Mr. Stanis saw some virtue in his actions due to the fact that the only victims of the extortion were people who possessed or shared child pornography. His own sister having been a victim of rape herself, Mr. Stanis felt sufficiently righteous, at least as he started this work.

Mr. Stanis also grew up with no real father figure or positive role models and began hanging with the wrong crowd at a very young age. When his father was around, he would beat him or his siblings or his mother and lock them in the closet.

Mr. Stanis submits that a sentence a sentence of 41 months—consistent with the government's recommendation, and at the upper end of the sentencing guidelines—based on Mr. Stanis' full measure of acceptance of responsibility, and having saved the government and court the expense of, is a fair and sufficient punishment that achieves the goals of the sentencing guidelines.

### CONCLUSION

The facts of this case are unique, to say the least. For the above reasons, a sentence of 41 months should be imposed as recommended by both Mr. Stanis and the Government, followed by a three-year term of supervised release. This sentence addresses the nature and seriousness of the criminal conduct that is relevant to this case, addresses Mr. Stanis' background, personal history, and characteristics. Moreover, it acts as an adequate deterrent, promotes respect for the law, and protects the public from future criminality. The Court should also impose most, if not all, of the strict conditions of probation set forth in the Presentence Report as well as the government's subsequent objection letter.

Sincerely,

Richard McBreen
Owens & McBreen, P.C.